RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2017 FEB -6 P 3: 54

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

JACQUES BURNETT,

    Plaintiff,

v.                                                           Civil Action No. 2:17-cv-70-WHA

KOCH FOODS OF ALABAMA, LLC.,

    Defendant.                                 JURY TRIAL DEMANDED

## COMPLAINT

**I.    JURISDICTION**

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202 and 29 U.S.C. § 2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 29 U.S.C. § 2601, *et. seq.* ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

**II.    PARTIES**

2.    Plaintiff JACQUES BURNETT (hereinafter "Plaintiff"), is a resident of Greenville, Butler County, Alabama and performed work for the Defendant in the

1

counties composing the Middle District of Alabama during the events of this case. Pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Middle District, Northern Division.

3.    Defendant, KOCH FOODS OF ALABAMA, LLC (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. §1331 and 29 U.S.C. § 2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

### III.    STATEMENT OF FACTS

4.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 3 above.

5.    Defendant hired Plaintiff on or about September 12, 2012.

6.    Plaintiff continuously worked for Defendant until October 4, 2016.

7.    Defendant terminated Plaintiff's employment on October 4, 2016.

8.    At all times while employed with Defendant, Plaintiff performed his job duties in a competent or better manner.

### IV.    COUNT ONE - FMLA – Interference

9.    Plaintiff adopts by reference each and every material averment contained

in paragraphs 1 through 8 above as if fully set forth herein.

10. As of September 27, 2016, Plaintiff was an FMLA qualified employee as Defendant employed Plaintiff for more than twelve months and Plaintiff had worked more than 1,250 hours during the preceding twelve months.

11. As of September 27, 2016, Defendant was an FMLA covered employer as it employed more than fifty (50) employees within 75 miles of Plaintiff's work location.

12. In May 2016, Plaintiff's brother was murdered.

13. As a result of his brother's murder, Plaintiff began to suffer symptoms of depression.

14. Plaintiff sought medical attention for the depression.

15. Plaintiff's health care provider placed Plaintiff on an anti-depressant medication to treat his serious health condition.

16. Plaintiff sought intermittent FMLA leave from Defendant.

17. Defendant approved Plaintiff's FMLA leave on August 15, 2016.

18. Defendant utilizes an outside administrator, known as FMLA Source, to oversee its FMLA policy administration.

19. On August 15, 2016, Plaintiff received notification from FMLA Source that his FMLA request had been approved.

20. FMLA Source further stated, "Estimated frequency of absence: on an intermittent basis for up to one treatment(s) or appointment(s) per month, lasting up to four hours(s) per treatment/appointment **and for episodic incapacitation as needed.**" (emphasizes added).

21. On September 21, 2016, Plaintiff suffered an on-the-job injury to his ankle.

22. Plaintiff informed his supervisor, Cole Falkenberry, of the injury.

23. Falkenberry told Plaintiff that he needed to take the rest of the week off.

24. As a result of his work related injury, Plaintiff was off of work September 22, 2016, and September 23, 2016.

25. Defendant usually did not schedule Plaintiff to work on Mondays.

26. On September 26, 2016, Falkenberry telephoned Plaintiff and asked him if he could "hop on one foot" in order to be at work the next day as Falkenberry "really needed" him.

27. As a result of Falkenberry's request, Plaintiff agreed to go to work on September 27, 2016.

28. Plaintiff worked all day on September 27, 2016.

29. At the end of the day on September 27, 2016, Plaintiff confronted Falkenberry and told him his ankle was still injured.

30. Plaintiff also informed Falkenberry and that he was suffering severe depression episode for which he had obtained FMLA leave.

31. Falkenberry directed Plaintiff to take off the next week and to return to work on Tuesday, October 4, 2016.

32. Plaintiff telephoned FMLA Source each work day from September 28, 2016, through October 3, 2016, and reported that he was off on FMLA leave.

33. Even though Falkenberry had direct knowledge of Plaintiff's whereabouts and issued his own instruction to Plaintiff to not report to work, Plaintiff telephoned Defendant's phone number for reporting absences on September 30, 2016.

34. When Plaintiff called Defendant's phone line to report his absence, no one answered the phone and there was no recording option to leave a message.

35. On October 3, 2016, a co-worker telephoned Plaintiff and said that he had heard Plaintiff had been fired.

36. That same co-worker obtained the telephone number for Defendant's General Manager, Bill McNeil, whose number Plaintiff had not had before that time.

37. Plaintiff immediately texted McNeil and asked if it was true that Defendant had terminated his employment.

38. On Monday, October 4, 2016, the GM, Bill McNeil, telephoned Plaintiff and accused him of being a no call/no show for three days.

39. Plaintiff explained to McNeil that Falkenberry had knowledge of his location and that he followed Falkenberry's instructions about not reporting to work.

40. McNeil said Falkenberry had given Plaintiff those instructions.

41. Plaintiff explained to McNeil that he called the job, but there was no answer and that he had called FMLA Source each day because of his intermittent FMLA leave.

42. McNeil replied that he was sorry, but he was "still going to let [Plaintiff] go."

43. At the time of Plaintiff's termination of employment, Defendant, through its chosen agent, FMLA Source, knew that Plaintiff exercised approved intermittent FMLA leave and that Plaintiff was utilized approved FMLA leave each day from September 28, 2016, through October 3, 2016.

44. Plaintiff informed McNeil that he had called FMLA Source and that he was absent for approved FMLA absences and also at the direction and approval of his supervisor, Falkenberry. Even with this knowledge, McNeil still terminated Plaintiff's employment.

45. In terminating Plaintiff's employment, Defendant violated the FMLA by interfering with Plaintiff's rights to return to work from approved intermittent FMLA leave.

46. As a result of Defendant's violation of FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V.   COUNT TWO – FMLA - Retaliation

47. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 45 above as if fully set forth herein.

48. As of September 27, 2016, Plaintiff was an FMLA qualified employee as Defendant employed Plaintiff for more than twelve months and Plaintiff had worked more than 1,250 hours during the preceding twelve months.

49. As of September 27, 2016, Defendant was an FMLA covered employer as it employed more than fifty (50) employees within 75 miles of Plaintiff's work location.

50. At the time McNeil terminated Plaintiff's employment, he knew, because Plaintiff told him, that Plaintiff had taken FMLA leave for each day from September 28, 2016, through October 3, 2016, that McNeil accused Plaintiff of being a no call/no show.

51. Defendant terminated Plaintiff's employment on October 4, 2016.

52. At the time McNeil chose to terminate Plaintiff's employment, he had actual knowledge that Defendant's outside administrator approved Plaintiff's FMLA leave.

7

53. At the time McNeil chose to terminate Plaintiff's employment, he had knowledge from Plaintiff that Falkenberry had instructed Plaintiff to be off work for a week to recover both from his work related injury, and because Plaintiff was having an FMLA qualifying episode of depression.

54. Instead of confirming with Falkenberry to verify the instructions about missing work, McNeil simply told Plaintiff that Defendant terminated his employment, showing both reckless indifference and/or intent to violate the FMLA.

55. As a result of Defendant's violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VI.  PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the *Family and Medical Leave Act*;

B. Enter an Order requiring the Defendant to make Plaintiff whole by awarding him reinstatement to the position he would have had, had he not been terminated, or in the alternative the equitable relief of front pay; and,

C. Award Plaintiff back pay, together with employment benefits, front pay, nominal damages, special damages, liquidated damages, and attorneys' fees and costs, and any additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU

OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste 110
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**SERVE DEFENDANT:**
Koch Foods of Alabama, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104